IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA ALDANA, )
)
        Plaintiff, )
) CIVIL ACTION
v. )
) No. 15-1022-JWL
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )
_____ )

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) determination that Plaintiff does not have a severe impairment or combination of impairments, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

**I.    Background**

Plaintiff applied for DIB, alleging disability beginning January 3, 2012. (R. 19, 130). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial

review of the final decision denying benefits. Plaintiff argues that the ALJ erred at step two of her decision in finding no severe impairment, and failed to provide a proper credibility analysis.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erred at step two in finding that Plaintiff does not have a severe impairment or combination of impairments. Because the court need not consider the propriety of the ALJ's credibility determination to find that she erred at step two, it will not. Plaintiff may make her arguments regarding credibility on remand.

## II. Discussion

Plaintiff points out that the burden to show an impairment is severe within the meaning of the Act is de minimis. She points to Social Security Ruling (SSR) 85-28 which cautions that if medical evidence does not clearly establish that an impairment or combination of impairments is not severe, "adjudication must continue through the sequential evaluation process." (Pl. Brief 8) (quoting SSR 85-28, 1985 WL 56856 at *3). Plaintiff acknowledges that Dr. Kindling, a state agency medical consultant, reviewed the record at the reconsideration level and opined that Plaintiff had no impairment or combination of impairments that is severe, but she also points out that her treating neurologist, Dr. Berman, later opined that Plaintiff can sit less than six hours in a workday, and that her seeing and hearing are limited due to blepharospasms, and oromandibular and lingual dystonia, and that she should be protected from exposure to

4

dust, fumes, odors, chemicals, gases, and hazards. (Pl. Brief 9). She argues that it was error for the ALJ to prefer the opinion of a non-examining medical source over that of a treating medical source and determine at step two of the sequential evaluation process that Plaintiff's combination of impairments is not severe within the meaning of the Act. (Pl. Brief 9-14).

The Commissioner argues Plaintiff did not meet her burden to demonstrate that she is disabled. (Comm'r Br. 10-11). She asserts that "the administrative record in this case firmly supports the ALJ's decision that Plaintiff did not have a 'severe' impairment or combination of impairments." Id. at 11. She argues that the ALJ expressly noted medical evidence supporting her decision and that Plaintiff reported significant improvement in her condition with medication. Id. at 12-13. She argues that the ALJ was correct to prefer Dr. Kindling's opinion over that of Dr. Berman for the reasons given in the decision, and that substantial record evidence supports that determination. Id. at 13-18.

**A.   Standard for Evaluating Impairments at Step Two**

A step two determination is based on medical factors alone, and not on vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); see also 20 C.F.R. § 404.1520(c) ("We will not consider your age, education, and work experience."). It is Plaintiff's burden to provide medical evidence that she had an impairment and how severe it was during the time she alleges she was disabled. 20 C.F.R. § 404.1512(c). The regulations provide that at step two:

5

> You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment, and are, therefore, not disabled.

20 C.F.R. § 404.1520(c).

An impairment is not considered severe if it does not significantly limit Plaintiff's physical or mental ability to do basic work activities--the abilities and aptitudes necessary to do most jobs--such as walking, standing, sitting, lifting, carrying, seeing, speaking, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a plaintiff must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). Plaintiff need only show that an impairment would have more than a minimal effect on her ability to do basic work activities. Williams, 844 F.2d at 751. However, she must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe. Hinkle, 132 F.3d at 1352.

The Secretary of Health and Human Services issued Social Security Ruling (SSR) 85-28 "[t]o clarify the policy for determining when a person's impairment(s) may be

found 'not severe' and, thus, the basis for a finding of 'not disabled' in the sequential evaluation of disability." 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 390 (1992); 1985 WL 56856 (Jan. 1, 1985). In that ruling, the Secretary cautioned that "A claim may be denied at step two only if the evidence shows that the individual's impairments . . . are not medically severe. . . . If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process." Id. at 393; 1985 WL 56856 at *3.

### B. The ALJ' Step Two Findings

The ALJ determined at step two of the sequential evaluation process that Plaintiff does not have any impairment or combination of impairments that significantly limits her ability to perform basic work activities. Therefore, she determined that Plaintiff does not have a severe impairment or combination of impairments within the meaning of the Act, and denied her application at step two of the evaluation process without applying the remaining steps.

In reaching that conclusion, the ALJ accorded little weight to the medical opinion of Plaintiff's treating neurologist, Dr. Berman, because Dr. Berman "failed to note in his progress reports any difficulty speaking or a reason to limit the claimant's sitting, performing postural activities[,] or environmental limitations." (R. 25). On the other hand, she accorded substantial weight to Dr. Kindling's opinion because it "is more consistent with the overall record." Id. She explained her finding of no severe impairment:

7

> The claimant has been diagnosed with Meige syndrome with mild dystonic spasms extending from cheek to neck, <u>mild</u> benign essential blepharospasms [involuntary closing] of the eyelids, mild pursing of the lips and mild dystonic spasms of the jaw leading to nontremulous protrusion of tongue reportedly causing claimant to occasionally slur her words. The initial MRI scan of the brain was negative, but more recent MRI scan of the brain showed <u>some atrophy</u> with minimal ischemia. On clinical examinations, the claimant's sensation, motor strength and reflexes were repeatedly, consistently[,] and persistently normal. She was articulate with speech and language intact without any obvious voice abnormality to suggest spasmodic dysphonia. The claimant was treated with Botox injections that would initially cause her difficulty swallowing (dysphagia) but her weight would remain stable and her dystonia would improve for two months, per her medical records, or one month per her testimony. It is only at the March 2013 Botox injection that the dysphagia was sufficiently severe as to require feeding through a tube, but the record does not report whether Botox was again tried to see if this were a one-time anomaly with the same degree of difficulty or other measures were instituted to control the dystonia. Up to now, the claimant's <u>spasms have been adequately controlled with medical management</u> and the claimant is articulate without a speech impediment that would pose more than slight interference with basic work related function. The facial dystonia is a nonsevere impairment.

(R. 24) (emphases added).

The court finds that the record evidence does not support these findings to the extent that a "non-severe" finding is "clearly established by medical evidence" within the meaning of SSR 85-28.

### C. Analysis

The ALJ appeals to record evidence of "mild benign essential blepharospasms" in finding that Plaintiff's impairments are not severe, and to be sure, certain medical records refer to such mild blepharospasms. However, Dr. Berman's most recent treatment note, dated March 3, 2013 refers to "frequent bilateral blepharospasm." (R. 338). Moreover,

8

the ALJ acknowledged that Plaintiff "does not drive because she had a spasm and smashed the car into the house." (R. 24). The records reveal that the "spasm" to which the ALJ refers was an eyelid spasm. (R. 327). Dr. Berman's treatment note from December 6, 2011 reveals that Plaintiff experiences forced eye closures, and states that "[f]orcing eyes open causes irritation." (R. 274). Dr. Berman opined that Plaintiff's seeing is limited, and stated that "Blepharospasm can cause functional blindness due to involuntary forced eye closure." (R. 316). This is clearly record evidence of more than a minimal affect on the basic work activity of seeing. Therefore Plaintiff's blepharospasms constitute a severe impairment within the meaning of the Act.

Further, the evidence does not support the ALJ's finding that a "more recent scan of the brain showed some atrophy." (R. 24). That finding originated in the ALJ's summary of Dr. Gamboa's treatment notes dated October 7, 2011, wherein the ALJ stated that an "MRI obtained on that date noted some atrophy with minimal ischemia." (R. 23) (citing Ex. 4F). However, the MRI report of Plaintiff's brain included in Dr. Gamboa's treatment notes for October 7, 2011 states: "[e]xtensive atrophy is present," and "[c]hronic findings of atrophy . . . are noted." (R. 249). The report also contains an "impression" section relating "[f]indings as noted above with chronic changes of atrophy." Id. (capitalization omitted). While the court does not possess the medical expertise to interpret the severity of, or limitations resulting from, "extensive" or "chronic" atrophy of the brain, neither does the ALJ. Moreover, "some" brain atrophy is not the same as "extensive" or "chronic" brain atrophy, and in using the characterization

9

of "some" atrophy, the ALJ's decision downplayed the severity of the atrophy, and did not directly confront the potential that "extensive" and "chronic" atrophy may be an indication of a "severe" impairment within the meaning of the Act.

Moreover, the ALJ's finding that Plaintiff's "spasms have been adequately controlled with medical management" (R. 24), is not supported by the record evidence, particularly Dr. Berman's March 3, 2013 report of his examination of Plaintiff, which showed "hypertrophy and dystonic muscle spasms" of her trapezius muscles bilaterally; "tense cervical paraspinous muscles bilaterally;" "frequent bilateral blepharospasm;" and "hypertrophy of the right SCM." (R. 338). Once again, while the court and the ALJ are without expertise to know the severity of, or limitations revealed by, these examination findings, it would appear that the ALJ chose to finesse rather than to confront the potential for a severe impairment within the meaning of the Act and the regulations.

Apparently, the ALJ chose to finesse the evidence potentially suggesting that Plaintiff's impairments are severe within the meaning of the Act and the regulations because Dr. Kindling opined that Plaintiff's impairments are not severe, and she accorded substantial weight to that opinion, but little weight to Dr. Berman's opinion suggesting otherwise. Her sole basis for according Dr. Kindling's opinion substantial weight was that it was more consistent with the overall record. But, as the court's discussion above reveals, Dr. Kindling's opinion is not consistent with the record evidence regarding blepharospasms, and at least potentially it is not consistent with the evidence regarding brain atrophy and medical management of Plaintiff's impairments. The ALJ did not

10

address these inconsistencies.  Moreover, although the ALJ discounted Dr. Berman's opinion because it was not supported by his progress notes, she did not recognize, or at least did not address, Dr. Berman's notations of muscle hypertrophy, frequent bilateral blepharospasms, or that forcing Plaintiff's eyelids open caused irritation.

As discussed herein, the medical evidence by no means clearly establishes that Plaintiff's impairments do not have more than a minimal effect on her ability to perform the basic work activities of seeing, and sitting (at least).  As noted above, SSR 85-28 requires that in such a case "adjudication must continue through the sequential evaluation process."  1983-1991 West's Soc. Sec. Reporting Serv., Rulings 393 (1992); 1985 WL 56856, *3.  The Ruling cautions:

> If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step.  Rather, it should be continued.

Id.; 1985 WL 56856, *4.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 11th day of February 2016, at Kansas City, Kansas.

        s:/  John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**